COURT OF APPEALS,

June 16, 1914.

# THE PEOPLE v. JOSEPH TYLKOFF.

(212 N. Y. 197.)

PENAL LAW, SECTION 43—INDICTMENT FOR SPEAKING DEFAMATORY WORDS
OF AND CONCERNING COMPLAINANT AT A PUBLIC MEETING—INSUFFI-
CIENCY OF INDICTMENT—ERRONEOUS CHARGE.

An indictment under section 43 of the Penal Law charged that
the defendant at a public meeting spoke three Polish words of and
concerning the complainant, signifying in English " She is a whore,"
and that he thereby openly outraged public decency against the
form of the statute in such case made and provided.  *Held*, that
the indictment does not state facts constituting a crime; and that
the court erroneously instructed the jury that " if the defendant ut-
tered those words that I have named to you at the time and place
in quesion, and under the circumstances then prevailing, it being
a public building, which was more or less thronged with people
composed of both sexes, I instruct you, as a matter of law, that if
he did utter those words, he was guilty of the crime as to which he
stands charged."

*People* v. *Tylkoff*, 161 App. Div. 908, reversed.

APPEAL from on order of the Appellate Division of the Su-
preme Court in the third judicial department, entered January
29, 1914, which affirmed a judgment of the Essex County Court
rendered upon a verdict convicting the defendant of a viola-
tion of section 43 of the Penal Law.

The facts, so far as material, are stated in the opinions.

*Robert W. Fisher* for appellant.  The first essential of the
crime defined by section 43 is not to be found in this case.
No wrongful act was alleged or proven.  (People v. McDer-

mott, 111 App. Div. 380; People v. Most, 171 N. Y. 423; Mc-Junkins v. State, 10 Ind. 140.)   The second essential of the crime defined by section 43 is not to be found in this case. There was no outrage of public decency.   (People v. Most, 171 N. Y. 423; McJunkins v. State, 10 Ind. 140.)

*Fred M. La Duke, District Attorney* (*Romaine Shepard* of counsel), for respondent.   The facts alleged in the indictment and established upon the trial constitute a violation of section 43 of the Penal Law.   (People v. Eckerson, 117 N. Y. Supp. 418; Bohan v. P. J. G. L. Co., 122 N. Y. Supp. 418; 122 N. Y. 19; Farmers' Bank v. Hale, 59 N. Y. 53; People v. Glynn, 128 App. Div. 257; Coxson v. Doland, 2 Daly, 66; People v. Bevins, 74 Misc. Rep. 377; People ex rel. Gordon v. Superintendent, 65 Misc. Rep. 653.)

WILLARD BARTLETT, Ch. J.:

The indictment in this case charges that the defendant at a public meeting spoke three Polish words of and concerning the complainant, signifying in English " She is a whore," and that he thereby openly outraged public decency against the form of the statute in such case made and provided.

The statute upon which the indictment is expressly based is section 43 of the Penal Law, the portion of which it is material to consider here reading as follows: " A person who wilfully and wrongfully commits any act   *   *   *   which openly outrages public decency, for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor."

The learned county judge before whom the case was tried construed the statute as applicable to the utterance of words alone; whereas it seems to me that section 43 of the Penal Law is intended to denounce and punish *acts* which openly outrage public decency, as distinguished from mere *words*.

The construction thus far given to the section, if approved by this court, may lead to the punishment of slander as a crime —a consequence which I do not believe was contemplated by the legislature.

It is impossible to sustain this indictment unless the words " commit any act " in the statute are construed broadly enough to include the utterance of a defamatory statement by word of mouth.

I am unwilling to adopt such a construction and thereby to hold that the legislature without clearly and unequivocally manifesting an intention so to do, has thus for the first time in the history of the state of New York made mere slander—*i. e.,* defamation by spoken words—a criminal offense.

The oral imputation of want of chastity applied to a woman did not even give her the right to recover damages in a civil suit at common law, although such right now generally exists in most of the states by virtue of the statutes expressly conferring it. If it has as yet anywhere been made a crime, that fact has escaped my attention. " Slander," says Mr. Townshend in his excellent treatise on the law of slander and libel, " is not like libel an indictable offence. Nor is a single precedent of any criminal proceeding for unwritten imputations upon the character of individuals to be found except in cases of high treason." (Townshend on Libel & Slander [4th ed.], page 6, n.)

I am convinced that section 43 of the Penal Law was designed to deal with deeds and not simply words of misconduct. Annoying language amounting to a nuisance is dealt with elsewhere in the statute. (Penal Law, § 720.) All that is charged or proved against the defendant here is the publication of a slander against a woman. The legislature unquestionably possesses the power to declare that mere slander shall be deemed criminal, if it sees fit to do so; but I insist that it has not done so yet. It is not to be presumed that such a pronounced change

in the criminal law would have been made in phraseology which certainly does not on its face suggest the meaning sought to be assigned to in this prosecution.

For these reasons I think this indictment does not state facts constituting a crime. The judgment of conviction should be reversed, the indictment dismissed, defendant's bail exonerated and the defendant discharged from custody.

WERNER, J.:

The defendant was indicted, tried and convicted as for a misdemeanor committed, it is alleged, in violation of the provisions of section 43 of the Penal Law; and the specification of the indictment is that on or about the fourth day of February, 1913, at a public meeting held in the village of Mineville, Essex county, this state, the defendant did " maliciously, unlawfully and openly outrage public decency " by speaking in the Polish language of and concerning one Marta Barkowska the words " ona jest kurwa," which, translated into English, means " she is a whore."

The section of the Penal Law (43) upon which this indictment is founded provides that " A person who wilfully and wrongfully commits any act which seriously injures the person or property of another, or which seriously disturbs or endangers the public peace or health, *or which openly outrages public decency,* for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor; but nothing in this chapter contained shall be so construed as to prevent any person from demanding an increase of wages, or from assembling and using all lawful means to induce employers to pay such wages to all persons employed by them, as shall be a just and fair compensation for services rendered."

The most casual reading of this statute at once reveals its peculiarities. It is obviously one of those " dragnet " laws

designed to cover newly invented crimes, or existing offenses that cannot be readily classified or defined. If there is the slightest doubt on this subject, one has only to refer to the former Penal Code (section 675), of which it was once a part, to ascertain that section 43 as it now stands is the result of a division of earlier sections and a re-distribution of subjects that is, to say the least, not palpably congruous. Even if we assume that there may be a natural and logical relation between the things which this section brands as criminal and those lawful acts which it expressly sanctions, we have still to learn, if we can, what is forbidden, and for that purpose we proceed to a closer view of the statute.

It is noteworthy that section 43 deals with *acts* as distinguished from *words*, and the reason is doubtless to be found in the collocation of interdicted subjects, and in the legislative recognition of the ancient common law rule which has long prescribed punishment for criminal libel, but has never recognized any such thing as criminal slander. We can all readily think of many acts that would seriously injure the person or property of another; or that would endanger the public peace or health; or that would openly outrage public decency. It is not so easy to enumerate mere words or phrases which would have that general effect.

The charge is that the defendant outraged public decency at a public meeting by calling a certain woman a whore. This language was plainly slanderous of the person of whom it was used; but that, as we have observed, is not a criminal offense. For the purpose of testing the question whether it is *per se* an outrage of public decency to call a woman a whore at a public meeting, the character and occasion of the gathering must be considered.

It is alleged that the offensive words which the defendant is charged with having used were spoken in the Polish language,

and from this we may fairly infer, what is not in terms alleged, that they were addressed to an audience composed of Poles. They were spoken at a meeting held for the purpose of considering the conditions relating to a labor strike then in progress in that neighborhood, and it was the complainant's position in the strike that seems to have inspired the defamatory words uttered by the defendant. If in groping for some standard of public decency which the statute does not fix or define, we seek light in the prevailing common judgment and moral sense of the community where an act is done or words are spoken, we are no better off than we were before. What is the prevailing common judgment and moral sense of a community of Poles in respect of such an expression as is charged against the defendant? For aught we know, the Polish language may be one in which this form of expression, when made in public, is not considered so improper as to shock or outrage public decency. The trouble with this statute is that it fixes no definite standard or rule of public decency; and in the nature of things that is plainly impossible. To the extent that this statute deals with acts and language so obviously offensive to the general sense of public decency that there is really no room for discussion, the courts of criminal jurisdiction will have no difficulty in applying and enforcing its provisions. In all other cases the courts must construe the statute, as best they can, in the light of the particular charge under investigation. We think the indictment in the case at bar, tested by this rule, does not specify a crime. (McJunkins v. State, 10 Ind. 140.) The charge against the defendant is really nothing more than an accusation of slander. Assuming the defendant's statement to be slanderous, the offense is not one for which there can be a criminal prosecution. The defendant's motion in arrest of judgment should, therefore, have been granted, and this view of the case

requires a reversal of the judgment of conviction, a dismissal of the indictment, and the discharge of the defendant.

If a majority of the court should decide that the indictment does charge a crime, there is an additional ground for reversal which is imperative. It grows out of the charge to the jury by the learned county judge, in whose court the case was tried. He said to the jury: " I instruct you, as a matter of law, that if the defendant uttered those words that I have named to you at the time and place in question, and under the circumstances then prevailing, it being a public building, which was more or less thronged with people composed of both sexes, I instruct you, as a matter of law, that if he did utter those words, he was guilty of the crime as to which he stands charged." This was plainly erroneous.

The judgment of conviction should be reversed, the indictment dismissed and the defendant discharged from custody.

Hiscock, J.:

While I concur in the decision that the judgment must be reversed because of error in the charge of the trial judge, I desire to dissent from the conclusion that the indictment does not charge an offense.

Section 43 of the Penal Law enacts that " A person who wilfully and wrongfully commits any act * * * which openly outrages public decency, for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor."

The defendant was accused under this provision by an indictment charging that " at a public place, to wit: At Heath's Hall at Mineville * * * at a public meeting then and there being held in said Hall, (he) did, wilfully, maliciously, unlawfully and openly outrage public decency in that * * * at the time and place aforesaid, in the presence and hearing of

many and divers persons there assembled  *  *  *  (he) did speak of and concerning one Marta Barkowska  *  *  *  ' she is a whore.' "

While the conviction has been unanimously affirmed, and thereby the conideration of the evidence offered under the indictment withdrawn from us, the principal features of the testimony may be stated for the better understanding of the legal questions which do survive.

A strike had been inaugurated at or near the place mentioned in the indictment, and public meetings of the strikers and of those interested in the strike were held in public halls. The defendant was a strike leader who was urging the maintenance of the strike. The woman concerning whom the words complained of were spoken, on the contrary, was advising a return to work. It was at one of these meetings that the defendant is charged with having committed the act set forth in the indictment, there being a sharp issue of fact as to whether he did use any such language.

In urging that the indictment does not sufficiently charge any crime, it is in the first place argued, at least by some of my associates, that the word " act " in the statute does not include conduct largely consisting of words, and that, therefore, the alleged misconduct of the defendant is not covered by its provisions.

We are required to construe the words in this statute not strictly but according to their fair import (Penal Law, § 21), and it seems to me plain that unless their interpretation is governed by some special consideration the language is broad enough to cover the conduct of one who should arise in a public gathering and proceed to utter foul and indecent language. Such a transaction as an entirety would be comprehended within the meaning of the word " act " interpreted according to its fair import.

But it is said that there is a special consideration which forbids us to give to the word " act " a meaning which will include conduct largely made up of language. This special reason, it is continued, is found in the fact that the law has differentiated slander and libel, and whereas it has made the latter indictable it has not made the former criminal, and it is argued that the construction now proposed would reverse this policy and make slander an indictable offense. It seems to me that this reasoning misinterprets the purpose of this statute. If its application to such an occurrence as that described in the present indictment was to reverse long-established law and make slander an indictable offense, we might very well hesitate to work such a revolution if possible to avoid it. But in my opinon the element of slander has no necessary connection with the purpose or enforcement of this statute, and if it has happened that the language complained of is slanderous of somebody that is an immaterial incident. The purpose of the statute is not to punish slander but to punish public indecency, and it requires no argument to demonstrate that language which is intensely slanderous may not be indecent at all, and, conversely, that language which is just as indecent as possible may not involve any element of slander. In the present case the inquiry is not whether a certain woman has been slander but whether public decency has been outraged.

When the statute is thus construed in respect of its proper purpose I see no reason why it should be limited to physical acts, and conduct composed in whole or part of words be excluded from its operation. One class of conduct may be just as indecent and offensive as the other. It seems to me quite immaterial whether a person, for instance, is guilty of vulgar and offensive actions and physical display or whether he describes such things by vile and expressive language. The statute is in the interest of decent conduct and for the protec-

tion of well-behaved people from the offensive conduct of others and it ought· to receive a liberal application.

It is also suggested that it will be difficult to determine in any particular case whether language is indecent. But it will be no more difficult to do this than to determine whether acts are of such a character. At the outset the class of conduct whether words or acts which may come under review under this statute is greatly limited by the qualification that they must "openly" outrage "public" decency.

It is true that there is no statutory or other precise test by which to determine what constitutes decency or indecency either of words or acts. Webster defines "decent" as something which is "becoming; fit; decorous; proper; seemly; as, decent conduct; decent language;" also as "Free from immodesty or obscenity; modest."

The Century Dictionary defines indecency as "That which is indecent or unbecoming; language, or behavior, or pictorial presentation, etc., that violates modesty or decorum; specifically, that which is obscene or grossly vulgar."

Bouvier says that indecency is "an act against good behavior and just delicacy."

It is obvious that the question whether a given act or word is indecent must within limitations be tested by the prevailing common judgment and moral sense of the community where it is performed or uttered (People v. Muller, 96 N. Y. 408), and further that such determination may be largely influenced by the particular circumstances and conditions under which a given act occurs. For instance, in a public meeting called to decide whether a particular woman should be appointed a policewoman or social worker it might be entirely appropriate and proper truthfully to disclose concerning her that she was an improper person for such appointment because of the bad character indicated by the word set forth in the present indictment and

which while perhaps somewhat harsher in sound is entirely synonymous with other words frequently used in public discussion or reports without any resulting thought of an affront to public decency.  On the other hand, without excuse or reason to use such language of a woman in a public and mixed gathering assembled to consider no subject which made the same relevant or appropriate might properly be found to be an outrageous and indecent act.  I cannot see that it would be any more difficult for a jury to determine whether the element of indecency existed in the case of words than in the case of an act, or any more difficult to determine whether either was indecent than to decide whether a given act was negligent.

The sufficiency of the indictment is only challenged by the motion in arrest of judgment, the demurrer having been withdrawn after the decision overruling it.  No question is raised concernng the admission of any evidence, and in my opinion the indictment sufficiently stated an offense under the statute. (People v. West, 106 N. Y. 293; People v. Williams, 149 N. Y. 1.)

CHASE and MILLER, JJ., concur with WILLARD BARTLETT, Ch. J.; COLLIN, J., concurs with WERNER, J.; HISCOCK, J., reads an opinion for a new trial, and HOGAN, J., concurs.

Judgment of conviction reversed, etc.

NOTE ON CRIMINAL LIABILITY FOR SLANDER OF A WOMAN.

A libel by mere speech is not indictable. People v. Stark, 59 Hun, 51.

Special provision is made in section 1906 of the Code of Civil Procedure, covering the action for slander of a woman, which reads,——

"In an action for slander, brought by a woman, for words imputing unchastity to her, it is not necessary to allege or prove special damages."

But there is no provision of the penal code covering the same offense, criminally considered.

Slander is not a crime at common law. State v. Wakefield, 8 Mo. Appeals, 11.

But in some states statutes have been passed making certain slanderous charges criminal offenses.

In Alabama a statement by a person that he is "satisfied" that another had hired witnesses to testify against him, was held to be criminal slander, as charging bribery. Booker v. State, 100 Ala. 30.

Arkansas holds slander a crime under certain conditions. McArthur v. State, 59 Ark. 431.

In Michigan, the words, "You are a swindler; you beat the poor people out of their money, and are a cheat and a fraud," are held criminally slanderous. Schultz v. Huebner, 108 Mich. 274.

In Missouri certain slanderous charges have been held to make the offender criminally liable. State v. Buck, 43 Mo. App. 443.

In Vermont a statute provides for the punishment of criminal slander. State v. Sutton, 74 Vt. 12.

In Missouri, under a statute making it a crime to impute want of chastity to a female, the words must on their face charge the prosecuting witness as with unchastity. State v. Bonine, 85 Mo. App. 462.

Charging a female with keeping a bawdy house is not equivalent to a charge of fornication or whoredom, and is not a criminal slander. State v. Boos, 66 Mo. App. 537.

In Texas, under statute, it has been held that a statement that a woman will consent to sexual intercourse is criminal slander. Wallace v. State, 49 So. 395.

A statement by accused that he had seen prosecutrix and a man "getting there" does not impute want of chastity, but is susceptible of that meaning by innuendo. Whitehead v. State, 39 Tex. Cr. 89.

Obscene language referring only to the fact that a man and a woman were in the habit of riding together in a sulky and not intended to charge that they were guilty of criminal intimacy is not criminal slander. Hix v. State, 20 S. W. 550.

Under a statute in North Carolina, making it a criminal offense to attempt in a wanton and malicious manner to destroy the reputation of an innocent woman by words written or spoken which amount to a charge of incontinency, it has been held that the offense consists, not in charging a woman with incontinency, but in attempting to destroy her reputation. State v. Davis, 92 N. C. 764.

It has been held under statute that to say a woman "had promised" to allow accused to have criminal intercourse with her, and not that she actually did allow it, does not charge incontinency. State v. Moody, 98 N. C. 671.

But a statement that a woman had intercourse with a male dog, charges incontinency. State v. Hewlin, 128 N. C. 571.

A statement that a chaste woman "looked like a woman who had miscarried" does not charge incontinency. State v. Benton, 117 N. C. 788.

The phrase "innocent woman" within the meaning of the North Carolina statute has been stated broadly to be one who has never had sexual intercourse with any man. State v. Malloy, 115 N. C. 737.

A woman who has had illicit intercourse, but has repented and has become virtuous is an "innocent woman" within the statute. State v. Meisenheimer, 123 N. C. 758.

A woman is "innocent," although she was in the embrace of a man, and they were about to commit the act but were interrupted before its consummation. State v. Hinson, 103 N. C. 374.

The slander of a woman as to her chastity, while not punishable under the common law or under any statute of the State of New York, may nevertheless become a crime, if it be brought within the provisions of section 1352 of the Penal Law, which reads in part as follows,——

"Any person who wilfully states * * * to any * * * Newspaper * * * any statement concerning any person which, if published therein, would be a libel, is guilty of a misdemeanor."

As to whether the defendant in the case to which this note is appended could have been properly indicted and convicted under the provisions of section 720 of the Penal Law, query.

Section 720 reads in part,——

"Any person who shall by any offensive * * * language, annoy * * * any person in any place * * * although such act * * * may not amount to an assault and battery, shall be deemed guilty of a misdemeanor."

---

## NOTE ON OFFENSES AGAINST PUBLIC DECENCY.

Section 43 Penal Law reads in part as follows,——

"A person who wilfully and wrongfully commits any act which * * * openly outrages public decency, for which no other punishment is expressly prescribed by this chapter, is guilty of a misdemeanor."

This was formerly part of section 675 of the Penal Code, which section does not seem to have been interpreted by the courts of this state on the particular question of the application of the words "openly outrages public decency," to a given state of facts.

Section 43 as it now stands is a sort of "omnibus section" intended as a legal drag-net, to embrace all crimes for which no specific punishment is prescribed by the other sections of the penal law. Various

offenses which might otherwise be indictable under this section, will be found to be covered by other sections of the Penal Law,—see Article 106, covering Indecency generally, and including there section 1140 (Indecent Exposure), 1140-a (Immoral Plays), 1141 (Obscene prints), 1142 (Indecent Prints in public places), 1142 (Indecent articles), 1143 (Mailing or carrying articles covered by last three preceding sections), 1146 (Keeping a disorderly House), 1148 (Male persons living on the earnings of a prostitute).

See also Article 148 of the Penal Law, covering Nuisances generally, wherein section 1530, defining a Public nuisance reads in part,——

" A public nuisance is a crime against the order and economy of the state, and consists in unlawfully doing an act, or omitting to perform a duty, which act or omission * * * offends public decency."

Under this section, so nearly resembling the wording of section 43 as to be almost identical therewith in its main features, it has been held,——

That a pantomime, symbolical of the retiring of a husband and wife upon their wedding night, although unattended by improper language or actual exposure of the person, may be indictable as a public nuisance where it suggests indecency, excites impure imaginations and is calculated to corrupt public morals. People v. Doris, 14 App. Div. 117, 12 N. Y. Crim. 100.

That keeping a house of prostitution is a public nuisance. Jacobowsky v. People, 6 Hun, 524.

That maintaining a house for abortion is a public nuisance. People v. Hoffman, 118 App. Div. 862, 21 N. Y. Crim. 140.

Section 1933 Penal Law provides in part,——

" A person who commits an act without this state which affects * * * the public * * * decency of this state, and which, if committed within this state, would be a crime, is punishable as if the act were committed within this state."

Section 720, Penal Law, provides in part,——

" Any person who shall, by any offensive or disorderly * * * language, annoy or interfere with any person in any place * * * although such act * * * may not amount to an assault and battery, shall be deemed guilty of a misdemeanor."