John J. Walsh, J.
Defendant appeals from a judgment of conviction in the City Court of Rome, New York, on the 21st day of April, 1959 before the court without a jury.
On this appeal, the following questions of law are presented:
1. Whether the information is sufficient in law;
2. Whether the prosecution proved a violation of section 722 of the Penal Law;
3. Whether reversible error was committed in refusing to allow the defense to offer prior inconsistent statements of witnesses for the purpose of impeachment.
Since this court is of the opinion that the prosecution failed to prove a violation of section 722 of the Penal Law, points 1 and 3 above are considered academic in nature.
*968 The testimony discloses that on the evening of March 7, 1959, the defendant was roller-skating at the itollerdrome at South James Street and Erie Boulevard West in the City of Rome in this county. Although defendant insists he did not start the fight, an altercation occurred between the defendant and several deaf-mutes. The complaining police officer was present and with the assistance of the owner broke up the fight and told the defendant and the several deaf-mutes to leave the premises.
Defendant did not leave the premises immediately because he could not find his street shoes. While he was trying to find the shoes, he continued to insist that he had not started the fight. The officer stated that he was not interested in who started the fight but merely in the defendant’s leaving the premises. As the defendant and the police officer moved toward the only exit, defendant continued to tell the officer that he did not start the fight. Near the exit door, the defendant remarked that he had been pushed around before by “cops” and got a year out of it and that he did not care if he got another year. The officer then asked the defendant his age and he replied,
‘ ‘ seventeen ’ ’. The officer told the defendant that he was old enough to come with him and arrested him. The entire incident occupied four or five minutes in time.
The motivating reason for the arrest is given in the testimony: “ Q. What made you decide to make the arrest? A. His actions.
Q. What type of actions? A. The fact that he was quite in disagreement with my wishes and plus the fact he refused to leave when I told him so and plus the fact he was wasting my time and plus the fact he told me that a cop had pushed him around before and so on. I decided to arrest him. ’ ’
On cross-examination, the complainant stated that he told defendant when asked why he was being arrested, “ Because he got wise and snotty with me.”
The problems presented to the courts of original and appellate jurisdiction in this State of squaring fundamental “ due process ” rights of a defendant with the necessity of providing a mechanism for a police officer to maintain order in a community is forcibly presented in an excellent article in the Brooklyn Law Review, December, 1958 (Yol. XXV, No. 1. pp. 46-72):
“ The function of the police officer is universal. Every society, primitive or advanced, has had and now has its police. The reason is basic; every society depends for its survival upon the ability of the police to maintain order in the community and *969 to prevent the emergence of incipient crime by destroying it in its breeding grounds.
* # #
“The disorderly conduct statute — New York Penal Law § 722 — is the statute most often employed by the police in situations of this type, and represents the chief legislative effort to arm the policeman with a device whereby he may cope with public disturbances as they arise ” (pp. 46-47).
To sustain a conviction for disorderly conduct, the following element must be established:
(a) The defendant must have committed one or more of the enumerated overt acts contained in the first 11 subdivisions of section 722.
(b) The defendant must either (1) have entertained the intent to breach the peace at the time he committed the overt act, or (2) the act committed must have been public in character as distinguished from a private annoyance and be such as actually tends to breach the peace. (People v. Ennis, 45 N. Y. S. 2d 446 [City Court, 1943]; People v. De Stefanis, 34 N. Y. S. 2d 52 [City Court, 1942]; People v. Yost, 61 N. Y. S. 2d 447 [City Court, 1946]; People v. Swald, 190 Misc. 239, 241 [City Court, 1947].)
The information alleges the following acts by defendant:
(1) “ Did holler and. shout at the deponent ”
(2) “ Did become abusive and threatening to the deponent ”
(3) “Did refuse to leave the establishment after being-ordered to do so by deponent.”
It is obvious that defendant was not charged with causing a crowd to collect (§ 722, subd. 4) and the testimony does not show that a crowd was caused to collect by reason of the words or actions of defendant apart perhaps from the attention directed toward the previous altercation for which fight defendant was not charged nor tried.
It is obvious also that any refusal to leave the premises (which refusal was not sufficiently shown on the trial) would not violate subdivision 3 of section 722 which applies specifically and only to a “ public street ” and a congregation with others. On the hearing the prosecutor confined his argument only to subdivisions 1 and 2 of section 722.
This court therefore Avill confine its opinion to these tAvo subdivisions. Subdivision 1 makes it a violation of section 722 to use, “ offensive, disorderly, threatening, abusive or insulting-language, conduct or behavior ’ ’.
*970 Apart from the fact that complainant was a peace officer whose primary responsibility is the preservation of the peace and is legally incapable in that capacity to be so provoked as to himself cause a breach of the peace (People v. De Stefanis, 34 N. Y. S. 2d 52, supra [City Court, 1942]), the actual words or conduct employed are hardly such as could be considered ‘ ‘ offensive, disorderly, threatening, abusive or insulting ’ ’ within the meaning of the statute. No profanity was used at any time and it is difficult to view the statement that defendant had been pushed around by police officers before and that he got a year for it and did not care if he got another year as threatening.
This court feels that the defendant failed to show proper respect for a police officer in uniform who was trying to do his duty as he saw it at the time and was perhaps as claimed by the complainant “ wise and snotty with me ”. Nevertheless, the words used fall short of sufficient to sustain a criminal or quasi-criminal conviction.
Nor can this court find a violation of subdivision 2. That subdivision makes the following a violation: “Acts in such
a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others.” (Italics supplied.)
There is no evidence in the record that any person other than the police officer was in any wise annoyed, disturbed, interfered with, obstructed or offended.
On the entire record, the judgment of conviction is reversed; the information is dismissed; and the fine of $10 is remitted.
Submit order in accordance herewith.