James J. Clynes, Jr., J.
The above-named defendants have been charged with a violation of .article 16 (§ 16-12, subd. [b]) of the 'Code of Ordinances of the City of Ithaca, New York which reads as follows:
“ Sec. 16-12. Keeping the peace * * * (b) Use ■ of instruments, sound devices. No person shall play, operate or use, or cause to be played, operated or used, any mechanical instrument, radio or wireless, speaker or horn, or any other instrument, device or thing in the city so as to disturb the peace and quiet of any neighborhood. (Ord. of 6-7-22, Ch. 2, 2; Ord. of 2-16-29) ”
A hearing on the alleged violation was held before me in City Court, City of Ithaca, New York on January 28, 1969.
Since there are no published decisions rendered under the section in question, the court must review decisions rendered under comparable statutes. The court notes that the two sections cited .as references under article 16 (§ 16-12, subd. [b]) of the Code or Ordiances of the City of Ithaca, New York are section 3-8 of the Ithaca City Charter and section 722 of the former Penal Law, now section 240.20 of the Penal Law. Section 3-8 of the Ithaca City Charter, entitled ‘ ‘ Powers Enumerated ’ ’ reads in part as follows:
‘ ‘ In .addition to the powers conferred by the last section [§ 3-7] the common council has power, and in the exercise *129 thereof may make, establish, publish and modify, amend and repeal ordinances, rules, regulations and by-laws: * * * (5) To restrain and punish vagrants, mendicants, street beggars and persons soliciting alms, common prostitutes, lewd and disorderly persons, and to prevent and punish drunkenness and disorderly and immoral conduct in public places or streets.” Also here again there are no published decisions under this particular section of the Ithaca City Charter.
Section 240.20 of the Penal Law reads in part as follows:
‘‘ Disorderly conduct. — -A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: * * * 2. He makes unreasonable noises; or * * * Disorderly conduct is a violation.”
Section 722 of the former Penal Law read in part as follows:
“ Disorderly conduct. Any person who with intent to provoke a breach of the peace, or whereby a breach of the peace may be occasioned, commits any of the following acts shall be deemed to have committed the offense of disorderly conduct: * * * 2. Acts in such a manner as to annoy, disturb, interfere with, obstruct, or be offensive to others; * * * 5. Shouts or makes a noise either outside or inside a building during the night time to the annoyance or disturbance of any considerable number of persons ”.
After reviewing the afore-mentioned statutes the court concludes that the ordinance in question is basically a disorderly conduct ordinance and was derived from the section of the former Penal Law. The court has reviewed the many cases cited under the older statute.
Who are the defendants and what is the nature of the charge? The Ithaca Savings Bank, now the Savings Bank of Tompkins County, is ,a banking corporation incorporated in 1868 under the Banking Law of the State of New York, with principal office located at the corner of North Tioga Street and East Seneca Street in the City of Ithaca. The defendant, W. Robert Farnsworth, is the president of the bank. The bank is governed by a board of trustees who are selected on the basis of the contributions they can make not only to the bank but to the welfare and growth of the county. The instrument in question is known as an electric carillon. It was first obtained on a six months’ trial basis from the Nor den Company in December 1964. At that time the company had approximately 812 installed in banks throughout the United States. The decision to purchase the chimes on a trial basis was made by the board of trustees. The president of the bank testified that at that time *130 he communicated with the Mayor of the 'City of Ithaca who gave him permission to install the chimes. After a four-week trial basis the board of trustees decided to purchase the carillon. This decision was preceded by a public poll, the response to which indicated overwhelming public support for the installation of the chimes. The evidence shows that the carillon plays at 9:00 in the morning, 12:00 noon and 5:00 in the afternoon, and at each occasion the Westminster chimes are played, then the gouging of the hour and then a song. The total time consumed per day is approximately 10 minutes.
Certain residents of the lower Bast Hill section of the City of Ithaca through Henry Guerlac have complained to the court that the playing of this electric carillon disturbs the peace and quiet of the neighborhood. The question before the court is whether or not the playing of the carillon violates article 16 (§ 16-12, subd. [b]) of the Code of Ordinances of the City of Ithaca, New York.
The defendants have admitted that the carillon is played from the roof of the Ithaca Savings Bank building which leaves the court to determine:
1. Was the playing of the carillon done with the intent to provoke a breach of the peace, and
2. If certain people were annoyed was it to such .an extent as to be a public inconvenience as against a mere private annoyance.
The first and most important element of the alleged violation in the case at bar is that there must be intent to provoke a breach of the peace.
In People v. Monnier (280 N. Y. 77 [1939]) the New York Court of Appeals, the highest court in the State of New York, held that in order to obtain a conviction under former section 722 of the Penal Law, the act must be committed with intent to provoke a breach of the peace or in such a manner that whereby a breach of the peace may be occasioned. At page 78 the court states, “ acts charged as disorderly conduct must be public in .character, and such as actually tend to disturb the public peace and quiet * * * The conduct charged must at least be such that a breach of the peace has become imminent or might reasonably be expected or intended to flow from such conduct.” This particular case was prosecuted on behalf of the People by the eminent attorney, Thomas B. Dewey.
To be guilty of disorderly conduct it is not essential that there be an actual breach of the peace, the test is whether the defendant’s conduct under the circumstances led to or was likely to lead to disorder or public disturbance.
*131 In the case of People v. Perry (265 N. Y. 362 [1934]) at page 365, the court said that the action complained of must at least be one which reasonably tends to be a breach of the peace, citing People v. Nixon (248 N. Y. 182 [1928]).
In the Perry case the facts were these: The defendants-appellants, while in a restaurant, at 4:00' in the morning, struck the defendant with their fists so as to cause him to fall twice to the floor. Three persons attempted to enter the restaurant but were waved away with the information that the place was closed. The court held this proof was insufficient to warrant the conviction of the defendants of the crime of disorderly conduct as defined by subdivision 2 of section 722 of the Penal Law where it appears that no appropriate language was heard, the restaurant was not fully lighted, only one employee was present and there was no one in the adjacent street except three witnesses who, instead of finding the defendant’s conduct offensive, testified that they voluntarily looked on to gratify curiosity or for amusement. The acts of the defendants cannot reasonably be held to have tended to such a disturbance of the tranquility of the people as to have constituted 1 ‘ disorderly conduct ” in violation of the statute. They were guilty of no offense other than assault either at common law or under the Penal Law.
People v. McCauliff (267 N. Y. 581 [1935]) stands for the proposition that there must be an intent on the part of the defendant to effect a breach of the peace or circumstances such ,as possibly could occasion such a breach. The possibility of a breach of the peace being occasioned must, under the conditions then existing, not be too remote. The conduct charged must at least be such a breach of the peace as to become eminent or might reasonably be expected or intended to flow from such conduct.
In People v. Donegan (19 Misc 2d 541 [1959]) the court stated at page 543, “ To constitute disorderly conduct there must be proof not only that (1) the defendant committed the acts charged, but also that (2) they were committed with intent to provoke a breach of the peace or under circumstances likely to cause a breach of the peace. Each case must depend upon the time, place and circumstances of the act. ’ ’
It is clear to the court from the above-cited cases that there must be intent and an actual or very distinct threat to the disturbance of the peace.
The second element of the alleged violation is it must amount to a public inconvenience as against a mere private annoyance.
*132 In People v. Reid (180 Misc. 289 [1943]) the defendant was a member of a sect of Jehovah Witnesses claiming* to be an ordained minister of that faith. The alleg*ed offense of disorderly conduct occurred in the hall of an apartment house occupied by 10 families. The defendant was engaged in distributing literature and playing a phonograph. He had done the same on a prior occasion and had been warned by the house superintendent to stay away from the apartments. The court stated that it has been clearly established that private or individual annoyances are not sufficient to constitute the offense of disorderly conduct. It was further stated that the burden was on the People to prove beyond a reasonable doubt that the defendant annoyed many people. The court concluded (p. 291) “In our opinion the acts of the [defendant] as described by the People’s witnesses cannot reasonably be held to have tended in the undisputed circumstances to such a disturbance of the tranquility of the People of the iState of New York as to have constituted ‘ disorderly conduct ’ in violation of the Penal Law.” The court also concluded that the conduct complained of must be more than bad manners, it must be substantial. The People have proven no more than a private annoyance.
In People v. Ludovici (13 N. Y. S. 2d 88 [1939]), the court held that to sustain a conviction for disorderly conduct, the conduct charged must at least be such that a breach of the peace has become imminent or might reasonably be expected or intended to flow from such conduct.
The acts relied on to establish a ‘ ‘ breach of the peace ’ ’ must be public in character and such as actually to tend to disturb the public peace and quiet, and private annoyances, however exasperating or reprehensible, are insufficient where no breach of the peace has resulted.
In that case the defendant called at private residences on Sunday morning for the purpose of interesting others in her professed religious belief. On private property she attempted to engage those who answered the door in conversation, persisted in her efforts to convince them notwithstanding a request to leave. However, defendant spoke only in an ordinary tone of voice and there was no noise, alarm, consternation or disorder and thus there was no ‘ ‘ breach of the peace ’ ’ such as to sustain a conviction for disorderly conduct under the statute.
People v. Broadbent (20 Misc 2d 547 [1959]) held that prior section 722 of the Penal Law was designed to prohibit a disturbance of public order by an act of violence or by any act likely to produce violence which, by causing consternation and *133 alarm disturbs the peace and quiet of a sizable segment of the community. It was not intended to prohibit private annoyances, however exasperating.
In People v. Pearson (188 Misc. 744 [1947]), at page 745 the court stated, 1 ‘ These observations suffice to show that even under our present Penal Law [referring to § 722] the offense of disorderly conduct is at least closely related to the crime of misdemeanor. It is in the nature of a crime and has all the attributes of a crime. The same rules of law and procedure are followed with regard to it as in the case of a crime. The right to a summary arrest exists; the complaint must be definite and state a specific charge; the burden of proving a defendant guilty is upon the People and must be established beyond a reasonable doubt; a trial on a charge of disorderly conduct constitutes jeopardy within the meaning or the Code of Criminal Procedure and the Constitution. ”
The court has also reviewed numerous United States Supreme Court cases on right of privacy and of the construction of the First and Fifth Amendments of the United States Constitution such as Public Utilties Comm. v. Pollack (343 U. S. 451 [1952]); Kovacs v. Cooper (336 U. S. 77 [1949]), and Time, Inc., v. Mill (385 U. S. 374 [1967]).
The language of the United States ¡Supreme Court that best fits the case -at bar is contained in the opinion of Mr. Justice Roberts in Cantwell v. Connecticut (310 U. S. 296 [1940]) at page 308 when he states, “ The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others * * *. When clear and present danger of riot, disorder, interference with traffic upon the public streets or other immediate threats to public safety, peace, or order, appears, the power of the 'State to prevent or punish is obvious.”
It is the opinion of this court that the playing of the carillon was done without intent to provoke a breach of the peace by the defendants. The board of trustees of the defendant and its president all are well-known public spirited individuals. Their deliberations leading to the purchase of the carillon as described in this decision would in themselves contradict any alleged intent to provoke a breach of the peace.
The court further finds that based on the record in this case the disturbances testified to amount to private annoyances rather than the necessary public disturbances.
It is the judgment of this court that the information be dismissed.