STATE OF CONNECTICUT *v.* ANONYMOUS (1972-4)*

CIRCUIT COURT

JACOBS, J. The demurrer filed by the defendant attacks the constitutionality of General Statutes

---

* Thus entitled, in view of General Statutes § 54-90.

§ 53a-181, the breach of peace statute (class B misdemeanor under the Penal Code) and § 53a-182, the disorderly conduct statute (class C misdemeanor). The defendant's basic claim is that these sections of the Penal Code are unconstitutionally vague in that "said statutes are overbroad, and in their overbreadth infringe upon the rights of free speech, free press, free association, peaceful assembly and petition for redress of grievances—all in violation of the First and Fourteenth Amendments to the United States Constitution."

Prior to the adoption of the Penal Code (General Statutes, tit. 53a), effective October 1, 1971, the crime of breach of the peace (General Statutes § 53-174) and the offense of disorderly conduct (§ 53-175) penalized miscellaneous types of conduct tending to create public disorder, offensive conditions and petty annoyances to individuals. It may be said that these offenses, prior to the adoption of the Penal Code, received little systematic consideration by legislators, judges and scholars for the reason that the penalties involved were relatively minor and the defendants were usually from the lowest economic and social levels. Appeals from convictions were infrequent. Pressures for legislative reform were minimal. Yet, this vast area of the law—perhaps the most important area of criminal administration—affected the largest number of defendants, involved a great portion of police activity, and powerfully influenced the view of public justice held by millions of people.

The common-law crime of breach of the peace, perpetuated by our old breach of the peace statute (§ 53-174), was broadly defined as any behavior which disturbs or tends to disturb the tranquility of the citizenry. This definition was sufficiently comprehensive to include behavior which, though carried on quietly or privately, would tend to pro-

voke an individual victim to violent reaction. See 1 Bishop, Criminal Law (9th Ed.) § 539. Our old disorderly conduct statute (§ 53-175) occupied, generally speaking, the same grounds as the common-law breach of the peace, but with a number of modifications and supplements varying from state to state. As was said by one of the judges in *People* v. *Tylkoff,* 212 N.Y. 197, 201, as to breach of the peace, "[I]t is obviously one of those 'dragnet' laws designed to cover newly invented crimes, or existing offenses that cannot be readily classified or defined."

The Connecticut Penal Code, in General Statutes §§ 53a-181 and 53a-182, completely restructures and reformulates this area of penal law. But even the most carefully drafted statutes leave considerable room for interpretation. It is not an easy task to select terms which will cover unjustified behavior while safeguarding the right to say unpopular things. It would be practically impossible to specify precisely the degree of shocking impropriety, but the constitutional problems are minimized because the challenged sections of the Penal Code require "intent" as an element of the offense.[1]

The revisers of the Penal Code significantly narrowed the law by specifying with particularity proscribed behavior. Thus, for example, § 53a-181 (breach of peace) embodies the usual formulations against (1) "violent, tumultuous or threatening behavior" in a public place; or (2) assaulting or striking another; or (3) threatening to commit any crime against another person or his property; or (4) publicly exhibiting, distributing, posting up or advertising any offensive, indecent or abusive matter

---

[1] See the New York cases of *People* v. *Hill,* 60 Misc. 2d 277; *People* v. *Ithaca Savings Bank,* 59 Misc. 2d 128; *People* v. *Wise,* 54 Misc. 2d 87; *People* v. *Donegan,* 19 Misc. 2d 541; *People* v. *McMinn,* 20 Misc. 2d 967; *People* v. *Pearson,* 188 Misc. 744.

concerning any person; or (5) in a public place, using abusive or obscene language or making an obscene gesture; or (6) creating a public, hazardous or physically offensive condition by any act which one is not licensed or privileged to do. Section 53a-182 (disorderly conduct) penalizes behavior which is itself disorderly, such as (1) engaging in fighting; or (2) by offensive or disorderly conduct, annoying or interfering with another person; or (3) making unreasonable noise; or (4) without lawful authority, disturbing any lawful assembly or meeting of persons; or (5) obstructing vehicular or pedestrian traffic; or (6) congregating with other persons in a public place and refusing to comply with a reasonable official request or order to disperse. Thus, the present disorderly conduct statute, unlike the former statute, is limited to that type of conduct which involves a genuine intent or tendency "to cause . . . inconvenience, annoyance or alarm." See Model Penal Code § 250.1 (2) (Proposed Official Draft, 1962). It is also to be noted in this connection that New York's disorderly conduct statute (N.Y. Penal Law § 240.20), which is practically identical to General Statutes § 53a-182, was sustained by the New York Court of Appeals. *People* v. *Pritchard,* 27 N.Y.2d 246.

Thus, in the view of this court, the drafters of our Penal Code sought to systematize, so far as practicable and possible, the chaotic provisions of the former law which penalized a wide variety of petty misbehavior under vague and misleading headings. The drafters also sought to provide a rational grading of penalties, thereby limiting judicial discretion by imposing substantial imprisonment for petty infractions. Additionally, the Penal Code, particularly those sections under attack by demurrer, seeks to safeguard civil liberty by careful definition of offenses.

The court holds that §§ 53a-181 and 53a-182 are drawn with sufficient precision to give men of ordinary intelligence notice of proscribed conduct. The court further holds that the terms used in the statutes under attack are not so vague that men of common intelligence must guess as to their meaning.

For reasons set forth herein, the demurrer is overruled on all grounds.