The STATE of Texas

v.

**Stephen John HOLCOMBE, Appellee.**

No. PD–1297–04.

Court of Criminal Appeals of Texas.

March 22, 2006.

Wm. Reagan Wynn, Fort Worth, for Appellant.

Tanya S. Dohoney, Asst. Criminal District Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

KELLER, J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HOLCOMB and COCHRAN JJ., joined.

The question in this case is whether a city ordinance that prohibits playing music "in such a manner as to ... unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities" is unconstitutionally vague because it fails to put the citizenry on notice of what is prohibited, fails to contain objective standards, and gives the police unfettered discretion to determine what conduct amounts to a violation. The answer to this question is "no." Consequently, we affirm the judgment of the Court of Appeals.

## I. BACKGROUND

On May 19, 2002, at approximately 2:30 a.m., two Bedford police officers, Joseph Riley and William Mack, responded for the second time that night to complaints about a loud-noise disturbance created by a house party. The officers issued a citation for violating Bedford's noise ordinance.

While returning to his patrol car, Officer Riley heard, from approximately seventy-five yards away, loud music playing from appellee's white Mercedes. The officer testified that appellee's music was louder than the noise at the party for which he had just written a citation. He further testified that the Bedford noise ordinance is a general noise ordinance that is not specific to residences. Officer Mack testi-

fied that the music was "extremely" loud from one hundred twenty and one hundred fifty feet away. Because the officers were called to the neighborhood in response to a loud noise disturbance call, and Officer Riley believed appellee was violating the Bedford noise ordinance, they pulled him over and asked him to turn down his music. While speaking to appellee through the sunroof of the car, Officer Riley smelled alcohol and noticed that appellee's speech was slurred and his eyes appeared to be bloodshot. It appeared to the officer that appellee was under the influence of alcohol, so he intended to keep speaking to him, but appellee apologized and drove off. Officer Riley then radioed Officer Mack, who was about seventy-five yards down the street, and asked him to stop appellee. Appellee subsequently was arrested for driving while intoxicated.

Appellee was charged by a misdemeanor information with driving while intoxicated. He filed a motion to suppress evidence, in which he alleged that he was illegally arrested without a warrant, and thus he requested that all evidence obtained as a result of the illegal arrest be suppressed. Following a pretrial evidentiary hearing, the trial court granted appellee's motion. The court ruled that the Bedford noise ordinance is unconstitutional because it is overbroad and vague for its failure to place the public on sufficient notice. The State appealed, and the Second Court of Appeals reversed the trial court's judgment, concluding that the ordinance is not unconstitutionally overbroad[1] or vague because it "describes the prohibited conduct and does not permit arbitrary or discriminatory enforcement."[2] Appellee's motion for rehearing was overruled.

Appellee filed a petition for discretionary review, arguing, among other things, that the Bedford noise ordinance is unconstitutionally vague because it fails to provide notice of the prohibited conduct, fails to contain objective standards, and gives the police unfettered discretion to determine what conduct violates the ordinance. We granted review and now turn to that issue.

## II. THE ORDINANCE

The Bedford ordinance provides:

The following sounds are hereby determined to be specific noises which can constitute a noise disturbance, and violations of this article are hereby defined. A noise does not have to exceed the specifications for environmental sound levels contained in section 12–53[3] in or-

---

1. Appellee does not challenge the Court of Appeals's holding regarding the overbreadth claim.

2. *Holcombe,* 145 S.W.3d at 253, 255.

3. Section 12–53, recodified at BEDFORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 36 (2002), states:
(a) It shall be a violation of this article for any person to operate or permit to be operated any stationary source of sound which creates a unit percentile sound level (L1) greater than the sound pressure level (L90) as set forth in this article, or creates a tenth percentile sound level (L10) or a ninetieth percentile sound level (L90) which exceeds the limits set forth in this article for the land use receiving the sound when measured at the property boundary of the receiving land.
(b) For the purpose of enforcement, a sound measurement period shall not be less than ten minutes nor more than 30 minutes.
(c) Sound level limits.
(1) Limiting sound levels, 7:00 a.m. to 9:00 p.m.
TABLE INSET:

| Category | L90 | L10 |
|---|---|---|
| Residential | 55 dBA | 65 dBA |
| Commercial | 62 dBA | 72 dBA |
| Industrial | 75 dBA | 85 dBA |

(2) Limiting sound levels, 9:00 p.m. to 7:00 a.m.
TABLE INSET:

| Residential | 50 dBA | 60 dBA |
|---|---|---|

der to constitute a violation of this section.

. . .

*(2) Radios, television sets, musical instruments and similar devices.* Operating or permitting to be operated any radio receiving set, musical instrument, television, phonograph, drum or other machine or device for the production or reproduction of sound in such a manner as to violate the sound levels of this article or to unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities, unless a permit of variance is first obtained.

BEDFORD, TEX., CODE OF ORDINANCES ch. 54, art. II, § 36 (2002).

## III. ANALYSIS

 It is a basic principle of due process that a statute is void for vagueness if its prohibitions are not clearly defined.[4] The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement.[5] Although a statute is not impermissibly vague because it fails to define words or phrases,[6] it is invalid if it fails to give a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited.[7] Moreover, where, as here, a statute does not substantially implicate constitutionally protected conduct or speech, it is valid unless it is impermissibly vague in all applications.[8]

Appellee argues that the Bedford noise ordinance is impermissibly vague because it does not give reasonable notice of the conduct the ordinance prohibits, nor provide an objective standard for determining when the ordinance is violated, such as a specific decibel level or a specific distance from which the noise is audible. He claims that the lack of notice or objective criteria in the ordinance gives police officers unlimited discretion to determine if the noise is sufficiently loud to constitute a violation.

The State argues that the ordinance is not unconstitutionally vague because it is couched in terms of objective reasonableness. Because the ordinance employs the word, "unreasonably," it provides an objective standard of evaluation. By grounding a noise ordinance in terms of reasonableness, the ordinance is not rendered unconstitutionally vague.

 We agree with the State that the Bedford noise ordinance contains objective criteria for determining what conduct is prohibited and therefore does not permit arbitrary enforcement. The ordinance clearly establishes an objective reasonable-person standard by referring to "neighboring persons of ordinary sensibilities" and

| Commercial | 57 dBA | 67 dBA |
| Industrial | 75 dBA | 85 dBA |

When a noise source can be identified and its noise measured in more than one land use category, the limits of the most restrictive use shall apply at the boundary and within the most restrictive land use category.

4. *See, e.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972).

5. *E.g., Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983).

6. *Engelking v. State,* 750 S.W.2d 213, 215 (Tex.Crim.App.1988).

7. *See Grayned v. City of Rockford,* 408 U.S. 104, 108, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972)

8. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982).

banning noise that "unreasonably disturb[s] or interfere[s] with the peace, comfort and repose" of such persons.[9] These words describe noise of the type or volume that a reasonable person would not tolerate under the circumstances.[10]

■ Because we are limited to the use of words, we cannot demand mathematical certainty from our language.[11] Although the Bedford noise ordinance does not define "noise" or "unreasonably disturb or interfere," words not defined are to be given their plain meaning.[12] In determining the plain meaning of a word, we initially look to dictionary definitions.[13]

"Noise" commonly means a loud, confused, or senseless outcry; or a sound noticeably loud, harsh, or discordant.[14] "Unreasonable" is an objective, reasonable-man standard.[15] The noise ordinance thus creates an objective standard that ensures that persons of ordinary intelligence know when a particular noise is too loud. Such objectivity prevents broad discriminatory or subjective enforcement by the police. Although the noise ordinance does allow a degree of police judgment, that judgment is confined to the judgment of a reasonable person.

Here, the ordinance gave appellee adequate notice that blaring music from his

---

**9.** Like the Bedford noise ordinance, the Model Penal Code relies on the term "unreasonable" in this context. The model law prohibits persons from making "unreasonable" noise "with purpose to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." MODEL PENAL CODE § 250.2(1)(b) (1962). The great majority of courts that have reviewed ordinances patterned on the Code or employing the phrase "unreasonable noise," like the Code, have upheld the ordinances against challenges of unconstitutional vagueness. *See Price v. Indiana*, 622 N.E.2d 954 (Ind.1993); *People v. Bakolas*, 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d 738 (1983) (per curiam); *Commonwealth v. Mastrangelo*, 489 Pa. 254, 414 A.2d 54 (1980), *appeal dismissed sub nom., Mastrangelo v. Commonwealth*, 449 U.S. 894, 101 S.Ct. 259, 66 L.Ed.2d 124 (1980); *People v. Fitzgerald*, 194 Colo. 415, 573 P.2d 100 (1978); *State v. Marker*, 21 Or.App. 671, 536 P.2d 1273 (1975); *State v. Johnson*, 112 Ariz. 383, 542 P.2d 808 (1975); *State v. Anonymous*, 6 Conn.Cir.Ct. 667, 298 A.2d 52 (1972); *Heard v. Rizzo*, 281 F.Supp. 720 (E.D.Pa. 1968), *aff'd per curiam* 392 U.S. 646, 88 S.Ct. 2307, 20 L.Ed.2d 1358 (1968); *Hess v. State*, 260 Ind. 427, 297 N.E.2d 413 (1973), *rev'd on other grounds sub nom., Hess v. State*, 414 U.S. 105, 94 S.Ct. 326, 38 L.Ed.2d 303 (1973).

**10.** Because the Bedford noise ordinance employs the phrase, "neighboring persons of ordinary sensibilities," to describe a reasonable person, it is more definite than, for instance, the dog barking ordinance in *State v. Singer*,

190 Ariz. 48, 945 P.2d 359, 361–62 (1997), which provides that "no person shall keep a dog within the City limits which is in the habit of barking or howling or disturbing the peace and quiet of *any person* within the City." (emphasis added). Yet, the court in *Singer* found inherent in the phrase "any person" a presumption that the person be a reasonable person, and thus upheld the ordinance against an unconstitutional vagueness challenge because it was capable of objective measurement. *Id.* at 362; *see also Town of Baldwin v. Carter*, 794 A.2d 62 (Me.2002) (importing a reasonable person standard into a dog barking ordinance to hold that it was not unconstitutionally vague). In this case, there is no need to import a reasonable person standard into the Bedford noise ordinance because the ordinance explicitly uses objective language and thus gives sufficiently definite notice of the prohibited conduct for purposes of due process.

**11.** *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294.

**12.** *Parker v. State*, 985 S.W.2d 460, 464 (Tex. Crim.App.1999).

**13.** *Ex parte Rieck*, 144 S.W.3d 510, 512 (Tex. Crim.App.2004).

**14.** WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1533 (1981).

**15.** *See, e.g., Bakolas*, 462 N.Y.S.2d 844, 449 N.E.2d at 738.

car stereo at 2:30 a.m. was prohibited. His conduct falls within the conduct proscribed by the Bedford noise ordinance. His claim of lack of notice fails.

Because the noise ordinance provides sufficient notice of the prohibited conduct,[16] it is unnecessary, for constitutional purposes, for the ordinance to include explicit prohibitions of noise above a certain decibel level or noise that can be heard at a certain distance.[17] The words of the Bedford noise ordinance are "marked by flexibility and reasonable breadth, rather than meticulous specificity," and the conduct that is prohibited is sufficiently definite to satisfy due process.[18]

We hold that the Bedford noise ordinance is not unconstitutionally vague, and we affirm the judgment of the Court of Appeals.

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

JOHNSON, J., concurred in the result.

MEYERS, J., not participating.

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

The trial court granted appellee's motion to suppress based on its decision that the City of Bedford noise ordinance is unconstitutional. The Court of Appeals also addressed that issue. The constitutionality of the ordinance is, therefore, properly before this Court.[1]

The police were in a residential neighborhood at 2:30 a.m. in response to complaints about a loud party at a house where the police issued a citation for violating the City of Bedford noise ordinance. *See State v. Holcombe,* 145 S.W.3d 246, 248–49 (Tex.App.-Fort Worth 2004). Appellee was driving through the neighborhood with his car stereo playing music louder than the noise at the house. *See id.* A police officer flagged appellee down and asked him to turn down the volume of his car stereo. *See id.* The officer immedi-

---

16. Indeed, the objective "reasonableness" test is used in many areas of the law as an appropriate determinant of liability and thus a guide to conduct. *See Price,* 622 N.E.2d at 967. In *Cameron v. Johnson,* 390 U.S. 611, 616, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968), for instance, the Supreme Court responded to a defendant's vagueness complaint as to a picketing ordinance, which prohibited only "picketing ... in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any ... county ... courthouses ...", by stating that "the term 'unreasonably interfere' plainly requires no 'guess[ing] at [its] meaning'." The court determined that, because the ordinance employs the term "unreasonably"-a widely used and well understood word, especially when juxtaposed with "interfere"—the ordinance is "a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be ... proscribed." *See id.* (quoting *Edwards v. South Carolina,* 372 U.S. 229, 237, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963)).

17. *See Blanco v. State,* 761 S.W.2d 38, 41 (Tex.App.-Houston [14th Dist.] 1988, no pet.) (finding that a decibel requirement in a noise ordinance would render it "rigid and inflexible"). In our opinion, distance and decibel level standards are not only unnecessary, but not usually helpful to the ordinary person because people do not carry around yardsticks or decibel meters.

18. *Grayned,* 408 U.S. at 110, 92 S.Ct. 2294.

1. The ground upon which the Court granted review states:

Is a city ordinance that prohibits playing music "in such a manner as to ... unreasonably disturb or interfere with the peace, comfort and repose of neighboring persons of ordinary sensibilities" unconstitutionally vague because it fails to put the citizenry on notice of what is prohibited, fails to contain objective standards, and gives the police unfettered discretion to determine what conduct amounts to a violation?

ately noticed that appellee was probably intoxicated. *See id.* Appellee turned down the volume of his car stereo and drove off. *See id.* Suspicious that appellee was intoxicated, the police stopped appellee's car again and eventually arrested him for DWI. *See id.*

Evidently believing that the police acted unreasonably under the Fourth Amendment when they stopped appellee and asked him to turn down his car stereo at 2:30 a.m. in a residential neighborhood, appellee filed a motion to suppress "all evidence" in the DWI case. Appellee's motion to suppress made no claim that the police were enforcing an unconstitutional noise ordinance when they stopped appellee's car and asked him to turn down the volume of his car stereo.[2] At the suppression hearing, appellee limited his written suppression motion to the initial stop, however, at the suppression hearing, the constitutionality of the noise ordinance became the dispositive issue.

The police officer (Riley) who initially flagged appellee down testified at the suppression hearing that he did not believe that appellee was "tied" to the house where the police had issued a citation for violating the noise ordinance. Riley testified that his initial stop of appellee's car "was to do with the city ordinance" even though he did not intend "to cite [appellee] for loud noise."

Q. [STATE]: Okay. How—Okay, let me ask you this. After you heard [appellee's] vehicle, what did you do?

A. [RILEY]: I looked up, watched the vehicle come towards me. Because the music was so loud and because I had just come from a loud noise disturbance where I issued a citation, I flagged [appellee] down just to have him turn the stereo down inside his car.

Q. Okay. So would it be safe to say then the reason you stopped the vehicle was to do with the city ordinance?

A. Yes, sir, loud noise violation.

Q. Were you going to cite him for loud noise?

A. No, sir, I was not. I was just going to have him turn the stereo down.

In closing arguments to the trial court both parties agreed that the initial stop of appellee by the police related to the noise ordinance. The State claimed that the stop was valid because Riley was "fully within his legal right to make contact with [appellee] and ask him to turn the radio down." Appellee claimed that the stop was invalid "because very loud music by itself is not definite enough." The trial court granted appellee's motion to suppress "all evidence" based on its finding that the "stop of [appellee] was invalid because the City of Bedford noise ordinance which was the basis for the initial stop of [appellee] is unconstitutional due to its being overbroad."[3]

I agree with the Court that the City of Bedford noise ordinance does not violate the Constitution. I write separately only

---

**2.** Appellee's motion to suppress asserted that appellee's arrest was "without valid warrant or reasonable suspicion or probable cause." The motion to suppress further asserted that the "officer's reason to seize the defendant's vehicle cannot reach beyond the burden of reasonable suspicion because the officer did not witnesses [sic] an offense of anything's [sic] out of the ordinary or did the officer observe anything other than valid non-suspicious activity."

**3.** This apparently is an application of the federal constitutional "fruit of the poisonous tree" doctrine which generally requires the exclusion of evidence that is the "fruit" of a violation of a defendant's rights. *See generally Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Kothe v. State*, 152 S.W.3d 54, 60–61 (Tex.Cr.App. 2004).

to suggest that this holding should not be read to foreclose other issues that might have some bearing on whether evidence in cases like this should be excluded or suppressed. *See, e.g., Illinois v. Krull,* 480 U.S. 340, 349–50, 107 S.Ct. 1160, 94 L.Ed.2d 364 (1987) (federal exclusionary rule inapplicable when police reasonably rely on a statute later deemed unconstitutional); Article 38.23(a), TEX.CODE CRIM. PROC., (plain language requiring exclusion of evidence "obtained" in violation of the law arguably does not require exclusion of "fruits" evidence); *State v. Daugherty,* 931 S.W.2d 268, 270–71 (Tex.Cr.App.1996) (discussing meaning of "obtained" in Article 38.23(a)); *Chavez v. State,* 9 S.W.3d 817, 823 (Tex.Cr.App.2000) (Price, J., concurring) (Article 38.23(a) should apply only where a defendant's personal or property rights are illegally violated in the obtainment of evidence against him).

With these comments, I join the Court's opinion.