ACCEPTED
03-14-00094-CR
4748960
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/2/2015 2:53:14 PM
JEFFREY D. KYLE
CLERK

No. 03-14-00094-CR

In the
Court of Appeals for the Third District of Texas
at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
4/2/2015 2:53:14 PM
JEFFREY D. KYLE
Clerk

_____

No. 13-1008-K26
In the 26th Judicial District Court
Williamson County, Texas

_____

WILLIAM ALBERT MOWER
*Appellant*
v.
THE STATE OF TEXAS
*Appellee*

_____

STATE'S BRIEF IN RESPONSE

_____

Jana Duty
District Attorney
Williamson County, Texas

John C. Prezas
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

ORAL ARGUMENT REQUESTED

i

# I.  STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rules of Appellate Procedure 39.1 and 39.7, Appellant has requested oral argument in this case. Therefore, to preserve its right to argue, the State requests oral argument although the State believes that the facts and legal arguments are adequately presented in the briefs and record, and that the decision process would not be significantly aided by oral argument.

# II.   TABLE OF CONTENTS

I.   STATEMENT REGARDING ORAL ARGUMENT ....................................... ii

II.  TABLE OF CONTENTS ...................................................................... iii

III. INDEX OF AUTHORITIES ................................................................ iv

IV.  STATEMENT OF FACTS .................................................................... 1

  A.  FACTS RELATED TO OFFENSE ITSELF ...................................... 1

  B.  FACTS RELATED TO ADMISSION OF EVIDENCE............................... 4

V.   SUMMARY OF THE ARGUMENT .................................................... 7

VI.  ARGUMENT .................................................................................. 7

  A.  ISSUE 1:  THE STATUTE PURSUANT TO WHICH APPELLANT WAS CONVICTED IS CONSTITUTIONAL .............................................. 7

    i.   Standard of Review ............................................................ 7

    ii.  Constitutional as Applied to Appellant .................................... 9

    iii. Constitutional on its Face .................................................. 12

  B.  ISSUES 2-3: STATE'S EXHIBIT 5 AND STATE'S EXHIBIT 6 WERE PROPERLY ADMITTED .......................................................... 15

    i.   Standard of Review .......................................................... 15

    ii.  Existing Precedent Gives Wide Latitude in Linking Appellant to Priors ... 15

    iii. State's Exhibit 7 Clearly Identifies Appellant ........................... 17

    iv.  The Evidence Sufficiently Links Appellant to State's Exhibit 6 ........ 18

    v.   The Evidence Sufficiently Links Appellant to State's Exhibit 5 ........ 20

VII. PRAYER .................................................................................... 22

CERTIFICATE OF COMPLIANCE .................................................... 22

CERTIFICATE OF SERVICE ........................................................... 22

## III.   INDEX OF AUTHORITIES

### CASES

*Broadrick v. Oklahoma*, 413 U.S 601 (1973) .................................................. 12, 13

*Bynum v. State*, 767 S.W. 2d 769, 774 (Tex. Crim. app. 1989) ................................9

*Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. Ref'd) ....................................................................................................................9

*Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim.App. [Panel Op.]1979)....................9

*Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988) .........................14

*Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013) ..............................................8

*Ex Parte Warren*, 353 S.W.3d 490, 493-495 (Tex. Crim. App. 2011)....................16

*Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007) ............................. 15, 16

*in re Shaw*, 204 S.W.3d 9, 15 (Tex.App—Texarkana 2006, pet. ref'd).................12

*Maloney v. State*, 294 S.W.3d 613, 625-629 (Tex.App.—Houston  [1st Dist.] 2009, pet. Ref'd) ......................................................................................... 9, 12, 13, 14

*Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990).............15

*New York v. Ferber*, 458 U.S. 747 (1982) ...............................................................12

*Parker v. State*, 985 S.W.2d 460,464 (Tex.Crim.App. 1999) ................................14

*Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002) ................................7

*State v. Holcombe*, 187 S.W.3d 496 (Tex. Crim. App. 2006) .................................13

*State v. Salinas* 892 SW2d 9, 10-11 (Tex. App.—Houston [1st. Dist.] 1997, pet. Ref'd) ....................................................................................................................7

*U.S. v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ........................................8

*U.S. v. Williams*, 553 U.S. 285, 297 (2008)..............................................................8

TO THE HONORABLE COURT OF APPEALS:

## IV.   STATEMENT OF FACTS

The state wishes to clarify the following facts to supplement those addressed in Appellant's brief.

## A. FACTS RELATED TO OFFENSE ITSELF

The site Appellant used to chat with a person he thought was fourteen year old girl was MocoSpace, a legitimate site that allows users to start a chat based on zip code. R.R. vol. 5 p. 23.  Adults do use MocoSpace when seeking romantic relationships.  R.R. vol. 5 p. 23. However, the only age restriction is that a MocoSpace user must input a date of birth that indicates they are 18.  R.R. vol. 5 p. 19-20.  There are no background investigations or other efforts to verify whether or not the birthdate input is accurate. R.R. vol. 5 p. 19-20.

The profile, "sammylopez", Sergeant Rodgers created and used to chat with Appellant did list an age of 22. R.R. vol. 5 p. 25, 27.  However, Rodgers took several steps to let Appellant know that the person with whom Appellant was chatting was indeed a underage child.  Rodgers chatted with Appellant a week prior to the chats recorded and entered into evidence in this case. R.R. vol. 5 p. 25. In this prior chat, Rodgers identified himself as a 14-year-old girl and updated his profile, the same one that showed an age of 22,  to indicate the girl was grounded and was in trouble with her mom. R.R. vol. 5 p. 25.  Rodgers did this specifically

1

to make clear to Appellant that Appellant was not chatting with a 22-year-old but rather with a 14-year-old girl, as 22-year-old women are not typically grounded by their mothers. R.R. vol 5. p. 25.

After this previous chat, in which Appellant learned that the profile with whom he was chatting belonged to a 14-year-old girl, Appellant again contacted Rodgers. R.R. vol. 5 p. 25. Rodgers recognized Appellant's screen name as badbilly1966. R.R. vol. 5 p. 25. This time, Rodgers updated the profile to make reference to summer time and not being able to believe that she was going to be a freshman. R.R. vol 5. p. 26. Based on statements made in the prior chat, the statements in the prior profile and the statements made in the then-current profile, Appellant had every indication he was initiating a second chat session with an eighth grade girl going into freshman year of high school after the summer ended. R.R. vol. 5 p. 25-26.

Appellant's first post in this chat was, "what's up sexy young lady?" R.R. vol. 5 p. 29. During that chat session Appellant references and confirms his knowledge from the previous chat that he is speaking with a 14-year-old girl when he says, "I'd ask you to go but your grounded." R.R. vol. 5 p. 31. Appellant then asked Rodgers to go skinny dipping with him, at which point Rogers reminded him that the online persona with whom Appellant was chatting was 14 and, thereby, giving Applicant the chance to back out. R.R. vol. 5 p. 32. Rather than backing

out, Appellant asked Rodgers if that was a problem and Rodgers stated "no just making sure that u remembered that I was only 14 and not like 22 like my profile says." R.R. vol. 5 p. 33.

After this exchange, when there can be no doubt left that Appellant is chatting with a 14-year-old child, Appellant asked, "you like big cock", sent Rodgers a picture of his penis and asked, "you wanna ride it". R.R. vol 5. p.36. Rodgers again made clear that the persona was a virgin and Appellant responded, "want me to pop you're cherry". R.R. vol. 5 p. 37

As the chat session becomes more sexual in nature, Rodgers, in the persona of the minor girl, says she doesn't want to be 15 and pregnant and that Appellant should bring a condom. R.R. vol. 5 p. 38. After they agreed on an address of a nearby park as a place to meet, Appellant stated he would bring beer, and directed the persona to wear a loose dress and no panties. R.R. vol. 5 p. 38-39.

Prior to arriving at the park, gave Rodgers his phone number so that Appellant could continue to communicate via text message. R.R. vol. 5 p. 42. Appellant notified Rodgers via text message when Appellant was near and when he arrived at the agreed upon park. R.R. vol. 5 p. 42. Rodgers observed Appellant walking around the park with his cell phone out, looking around as if expecting to meet someone, and carrying brown bags that appeared to contain beer. R.R. vol. 5 p.42-43.

At no point in the records from the chat or from the testimony at trial, is there any indication that Appellant ever made reference to age-play or any sort of roleplay or attempted to clarify the true age of the profile with whom he thought he was chatting. Rather, Appellant accepted without hesitation the assertion that he was chatting with an underage girl and continued to pursue a sexual interlude with her. Appellant's admissions in his subsequent interview with investigators further confirms that he did, in fact, go to the agreed upon meeting location with the plan to engage in sexual intercourse with a person he believed to be a 14-year-old girl. R.R. vol. 7, Exhibit 3.

## B. FACTS RELATED TO ADMISSION OF EVIDENCE
### AT PUNISHMENT PHASE OF TRIAL

During the punishment phase of the trial, the State offered State's Exhibit 5 and State's Exhibit 6, to which Appellant objected. R.R. vol. 5 p. 93. After allowing both sides to argue outside the presence of the jury, the Court admitted State's Exhibit 6 but initially sustained Appellant's objection as to State's Exhibit 5, R.R. vol. 5 p. 93-99, 100. After further argument, the trial court admitted State's Exhibit 5, R.R. vol. 6 p. 11.

State's Exhibit 5 consists of two documents from the state of Nebraska, one entitled "Amended Complaint" and one entitled "Journal Entry and Order", R.R. vol. 7, State's Exhibit 5. The latter appears to be a computer print-out summary of

the disposition of the complaint and states, "Defendant was granted allocution and sentence was pronounced by the Court." R.R. vol. 7, State's Exhibit 5. The "Amended Complaint" charges William Mower with violating the Nebraska Sexual Offender Registration Act on January 16, 2008, by failing to register with the Sheriff of the County of Hall within the appropriate time period after becoming subject to such registration, R.R. vol. 7, State's Exhibit 5. Both pages of State's Exhibit 5 document a Date of Birth of 6/12/1966 and the name of the person charged and sentenced as William Mower, R.R. vol. 7, State's Exhibit 5. Both pages are consistent with each other in their reflection of the Nebraska statute charged, the County of Hall, the Case ID number of CR08-188, R.R. vol. 7, State's Exhibit 5.

State's Exhibit 6 is a Certificate of Conviction from the state of New York that reflects that William A. Mower pled and was sentenced for the crime of Attempted Rape in the First Degree. R.R. vol. 7. State's Exhibit 6 does list an erroneous date of birth of 6/1/1966 rather than 6/12/1966. R.R. vol. 7. State's Exhibit 6 lists a disposition date of December 17, 1998. R.R. vol. 7.

During the punishment phase of the trial, the State also offered, and the trial court admitted, State's Exhibit 7, a business record affidavit and accompanying records from the Texas Department of Public Safety's Sex offender Registration Bureau. R.R. vol. 6 p. 101. State's Exhibit 7 contains a variety of information

identifying Appellant, such as name, date of birth, photographs of Appellant's face, an FBI number, a TIC number, an NIC number, a driver's license number, social security number, height, weight, shoe size, eye and hair color, a listing of scars and tattoos, signature, and a full set of Appellant's fingerprints. R.R. vol. 7 State's Exhibit 7. The name and date of birth of Appellant contained in State's Exhibit 5 match that reflected for Appellant in State's Exhibit 7. R.R. vol. 7 State's Exhibit 5, 7. State's Exhibit 7 also lists the conviction for attempted rape in New York as the basis for the imposition of sex offender registration on Appellant and contains corroborating details, as discussed further below. R.R. vol. 7., State's Exhibit 6, 7.

During the punishment phase of the trial the State also offered, and the trial court admitted, State's Exhibit 8, a fingerprint card collected by Janet Boring, a crime scene specialist with the Williamson County Sheriff's Office. R.R. vol. 6 p. 107, 112, R.R. vol. 7. Ms. Boring testified as to her training and experience and then testified that she compared the fingerprints she collected in State's Exhibit 8 and the fingerprints contained in State's Exhibit 7 and concluded both sets of fingerprints came from the same person. R.R. vol. 6 p. 113, 109-112.

Also during the punishment phase, the State offered State's Exhibit 3 (a previous redacted version State's 3A had been offered at trial with many of the portions relevant to this appeal redacted), a video recording of an interview with Appellant. R.R. vol. 7. During that interview, Appellant admitted to both the

6

offense reflected in State's Exhibit 5 and in State's Exhibit 6.  R.R. vol. 7, Exhibits 3, 5, 6.

## V.  SUMMARY OF THE ARGUMENT

The Statute pursuant to which Appellant was convicted is neither overbroad nor impermissibly vague.  It does not forbid the "Age Play" Appellant describes and it is clear that Appellant was not engaged in "Age Play" in this case. Therefore, the statute is constitutional both as applied to Appellant and on its face.

Both State's Exhibits 5 and 6 were properly admitted because the State produced sufficient evidence, consistent with existing precedent, to properly link Appellant to both exhibits.

## VI.  ARGUMENT

## A. ISSUE 1:  THE STATUTE PURSUANT TO WHICH APPELLANT WAS CONVICTED IS CONSTITUTIONAL

### i.  Standard of Review

When considering Appellant's assertion that the Tex. Penal Code §33.021 is unconstitutional, this Court must review the statute de novo.  *See, State v. Salinas* 892 SW2d 9, 10-11 (Tex. App.—Houston [1st. Dist.] 1997, pet. ref'd).  The court must presume the statute is valid and the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002).

Generally, the burden rests up on the person challenging the statute to establish its unconstitutionality. *Id*.

Appellant is correct that in *Ex Parte Lo*, the Court of Criminal Appeals held that where the government seeks to restrict and penalize speech, precedent from the Supreme Court of the United States makes clear that a "strict scrutiny" analysis applies, and the usual presumption of constitutionality is reversed. *Ex Parte Lo*, 424 S.W.3d 10 (Tex. Crim. App. 2013). However, it is not speech that the government seeks to restrict in Appellant's case. The Court of Criminal Appeals in *Ex Parte Lo*, struck down section 33.021(b) of the Texas Penal Code that did punish speech by prohibiting certain types of sexually explicit communications. *Id*.

However, the Court of Criminal Appeals made a strong and direct distinction between that provision and §33.021(c), which prohibits the conduct of using electronic communications to solicit a minor to meet another person with the intent that the minor will engage in certain sexual behavior. *Id*. In fact, the court noted, "Such solicitation statutes exist in virtually all states and have been routinely upheld as constitutional because 'offers to engage in illegal transactions [such as sexual assault of a minor] are categorically excluded from First Amendment protection.'" *Id.* at 15, citing *U.S. v. Williams*, 553 U.S. 285, 297 (2008) and *U.S. v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004).

The Court of Criminal Appeals went on to note that it is the conduct of requesting that a minor engage in illegal sexual acts that is the gravamen of the statute by which Appellant in this case was convicted and noted that the First Court of Appeals previously upheld the constitutionality of this statute in *Maloney v. State*, 294 S.W.3d 613, 625-629 (Tex.App.—Houston [1st Dist.] 2009, pet. Ref'd). The Court of Criminal Appeals noted that the conduct oriented §33.021(c), while not an issue in that case, provided, "an excellent contrast" to the §33.021(b) that they ultimately deemed unconstitutional. *Id.*

Thus, Appellant's reliance on *Ex Parte Lo* in this case is misplaced. Therefore, this Court must uphold the statute if it can determine a reasonable construction that will render it constitutional. *Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979). Further, if the statute at issue here can be construed in more than one way, at least one of which sustains its validity, this Court should apply the interpretation that sustains is validity. *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

## ii. **Constitutional as Applied to Appellant**

When asserting that a statute is facially unconstitutional, Appellant must first carry the burden of showing that the statute is unconstitutional as applied to him. *Bynum v. State*, 767 S.W. 2d 769, 774 (Tex. Crim. app. 1989) Appellant's brief does not appear to contain any such argument beyond a single statement that

Appellant was chatting with a person whose profile indicated they were twenty two years old in what Appellant terms an adult-only chat room. Other than this statement, the entire brief is directed toward challenging the constitutionality of the statute as a whole.

Regardless, §33.021 is clearly not unconstitutional as applied to Appellant, and therefore, this Court need not consider the more general assertion of unconstitutionality as the First Court of Appeals did in *Maloney*. Appellant never made any reference to fantasy, inquired as to the true age of the persona with whom he was chatting, or attempted to otherwise define the scope of any such fantasy. Instead, Appellant was repeatedly confronted with the fact that the person with whom he was chatting was an underage girl. Appellant responded to the multiple repeated assertions and clues of the age of the person with whom he was chatting by soliciting for sexual activity the person he thought was an underage girl, arranging a meeting, and then arriving at the meeting place with the very supplies that he indicated he would bring.

Further, in State's Exhibit 3, the video recording of law enforcement interviewing the Appellant, the Appellant makes admissions that make clear that the statute at issue is constitutional as applied to him. Once at approximately

12:38:00[1] and twice in a discussion beginning at approximately 13:17:06, Appellant makes the statement, "You got me dead to rights." C.R. vol. 7. The Appellant admits that he knew the girl with whom he was chatting was 14 in a conversation beginning at approximately 12:38:45. C.R. vol. 7. He admits he chatted with "her" (the 14-year-old persona) once before and discussed how "her" mother was angry at "her" in a conversation beginning at approximately 12:42:10. R.R. vol. 7. Appellant admits sending "her" the picture of his erect penis at approximately 12:43:48. Appellant also admits that when "she" told him "she" was a virgin, he said he wanted to "pop her cherry," at approximately 12:48:10. R.R. vol. 7. At approximately 13:01:00 the Appellant admits he was sexually stimulated by the conversation with "her." R.R. vol. 7. At approximately 13:03:20 the Appellant admits that he has an interest in young girls because they are young and inexperienced and he is older and can "show them the ropes." R.R. vol. 7. At approximately 13:11:20, the Appellant agrees that if a girl had shown up in a sundress and no panties he would have sexually assaulted her. R.R. vol. 7. Finally, at approximately 13:29:30, the investigator interviewing the Appellant asked him if he understood how bad it could have been if a 14-year-old girl had shown up, and the Appellant answered, "Yes I do. Yes I do. And that's what's eating me up.

---

[1] The times indicated in this brief come from the timer on the banner that is visible at the top of the video when the video file contained on State's Exhibit 3 is played on a PC computer with Windows Media Player.

Knowing I was going to do something so," and then Appellant trailed off without finishing his sentence. R.R. vol. 7.

Thus, the interview with the Appellant makes clear that he was not engaging in "age play" or some other fantasy, but in fact was planning to meet and have sex with a person he believed to be a 14-year-old girl, and that if he had found a 14-year-old girl at the park where law enforcement found him, he would have sexually assaulted her.

### iii. <u>Constitutional on its Face</u>

However, if this Court does consider Appellant's assertion that §33.021 is facially unconstitutional, it should consider the First Court of Appeals decision in *Maloney*, which is directly on point. There, as here, §33.021 (c) was challenged, unsuccessfully, as void for vagueness and as being overbroad on the basis of the lack of definition for the term fantasy and that it prevents adults from engaging in fantasy with another consenting adult. *Maloney v. State*, 294 S.W.3d at 625-629.

### 1. <u>Statute is Not Overbroad</u>

The Supreme Court of the United States has held that the doctrine of overbreadth should be employed with hesitation and only as a last resort. *See, New York v. Ferber*, 458 U.S. 747 (1982). Thus, to invalidate a statute on its face, the overbreadth must be substantial and a court must find more than the mere possibility of imagining some unconstitutional application. *See, In re Shaw*, 204

12

S.W.3d 9, 15 (Tex.App—Texarkana 2006, pet. ref'd) (citing *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789 (1984)) and *Broadrick v. Oklahoma*, 413 U.S 601 (1973). Indeed the Supreme Court has said that when conduct, and not just speech, is involved, the overbreadth of the statute at issue must, "not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick*, 413 U.S. at 615.

The First Court of Appeals in Houston, considered these cases, among others, in holding that prevention of sexual assault and abuse of children addressed by §33.021(c) was "of surpassing importance" and that, "the incidence of the State seeking to prosecute two consenting adults engaging in online role playing or 'fantasy' would likely be exceedingly low." *Maloney*, 294 S.W.3d at 628. That court then held that the over breadth of §33.021 was not substantial relative to its plainly legitimate sweep and therefore the section was not unconstitutionally overbroad. The First Court's analysis is sound and this Court should adopt its holding. *Id.*

## 2. **The Statute is Not Impermissibly Vague**

Appellant also claims that §33.021 is void for vagueness because it fails to provide a definition for fantasy, for which proposition Appellant cites *State v. Holcombe*, 187 S.W.3d 496 (Tex. Crim. App. 2006). In *Holcombe*, the Court of Criminal Appeals did indeed hold that a statute is void for vagueness when it fails

to define a criminal offense with enough clarity that ordinary people can understand what conduct is forbidden in a manner that does not allow arbitrary or discriminatory enforcement. *Id.* at 499. However, The Court of Criminal Appeals has also held that a statute is not unconstitutionally vague simply because it fails to define certain words or terms contained therein, but has instead directed courts to give such undefined words their plain meaning. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988), *Parker v. State*, 985 S.W.2d 460,464 (Tex. Crim. App. 1999).

Further, the First Court of Appeals reasoned in *Maloney* that §33.021 does not criminalize engaging in fantasy, but instead very clearly prohibits a person from "soliciting a minor over the internet or through other electronic media to meet him or another person with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him or another person." *Maloney*, 294 S.W.3d at 629. The First Court then correctly reasoned that since it is not until this conduct is established that §33.021 prohibits an accused from defending against the charge by claiming that he was merely engaged in fantasy, §33.021 does not criminalize the act of fantasy. *Id*. Based on that rationale, the First Court held that §33.021 was not unconstitutionally vague. This reasoning is sound and this Court should hold similarly here.

## B. ISSUES 2-3: STATE'S EXHIBIT 5 AND STATE'S EXHIBIT 6 WERE PROPERLY ADMITTED

### i. Standard of Review

Appellant is correct that this court must review the trial court's decision to admit State's Exhibit 5 and State's Exhibit 6 under the abuse of discretion standard and only reverse the trial court's decision if the trial court acted without referring to any guiding rules or principles or, in other words, if the trial court acted in an arbitrary and unreasonable manner. *Montgomery v. State*, 810 S.W.2d 372, 380, 391 (Tex. Crim. App. 1990) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-242 (Tex. 1985), cert. denied 476 U.S. 1159, (1986)). "The mere fact that a trial judge may decide a matter within his discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *Id*.

### ii. Existing Precedent Gives Wide Latitude in Linking Appellant to Priors

The Court of Criminal Appeals has held that to establish a Defendant's previous conviction the State must show that a prior conviction exists and must link the Defendant to that conviction, but has not required any particular manner for providing such proof. *Flowers v. State*, 220 S.W.3d 919 (Tex. Crim. App. 2007). Not only is a written judgment and sentence not required, but the Court of

Criminal Appeals noted that in a "paperless" era, such judgments may become obsolete, when it went on to hold that a computer print-out from the Dallas County Clerk coupled with a certified driving record was enough to prove the prior convictions contained therein beyond a reasonable doubt. *Id* at 923-925. The Court of Criminal Appeals cited the *Flowers* holding to find that the Texas Department of Criminal Justice properly imposed sex-offender registration conditions of parole based on an out of state prior sex offense conviction as evidenced by the DPS CCH report (or rap sheet) and a "Final Disposition Report" submitted to the FBI by the Chicago Police Department. *Ex Parte Warren*, 353 S.W.3d 490, 493-495 (Tex. Crim. App. 2011).

In his brief, the Appellant himself acknowledges that the *Flowers* case expanded the ways the State can prove a prior conviction in light of the ways in which electronic records are handled in the digital age. This is especially true given that *Flowers*, like this case, involves prior convictions from a State other than Texas, and thus which operates on rules and common procedures other than those imposed for judgments here in Texas. Appellant's objection then, in light of the wide latitude given the State in *Flowers*, is to challenge the links between the Appellant and State's Exhibits 5 and 6.

### iii. State's Exhibit 7 Clearly Identifies Appellant

The State used State's Exhibit 7 to link the Appellant to the prior convictions about which Appellant now complains. The State did so because the link between Appellant and State's Exhibit 7 is clear. State's Exhibit 7 contains a multitude of information about the Appellant including multiple photographs of his face, date of birth, sex, race, height, weight, eye color, hair color, FBI number, DPS number, TIC number, NIC number, driver's license number, shoe size, blood type, social security number, address history, cellular phone numbers, information regarding his vehicle (year, make, model, license plate number, color, style), a description of scars and tattoos, and multiple fingerprints of the Appellant include a full set and multiple thumbprints. R. R. vol. 7.

Further, Janet Boring, the fingerprint expert with the Williamson County Sheriff's Office testified that the fingerprints on State's Exhibit 7 matched the fingerprints she obtained from the Appellant. R.R. vol. 6 p. 113, 109-112. This kind of information, especially the FBI number and other such government issued numbers, is the type of information used and approved in the *Flowers* and *Warren* cases.

Thus, there can be little doubt that the same William Mower appealing his conviction in this case is the same William Mower described in State's Exhibit 7.

### iv. **The Evidence Sufficiently Links Appellant to State's Exhibit 6**

State's Exhibit 6, entitled "Certificate of Conviction" is clearly on its face documentation of a conviction from the state of New York for the crime of Attempted Rape in the First Degree in violation of section 110-130.35 of New York penal laws. R.R. vol. 7. State's Exhibit 7 indicates the Appellant is required to register as a sex offender in Texas because of a New York conviction for "Attempt to Commit Rape/1st Degree/Forcible Compulsion New York Penal Law 130.35." R.R. vol. 7. Both State's Exhibit 7 and State's Exhibit 6 list the same sentencing date. R.R. vol. 7. This sentencing date, offense title, and section of the New York penal law are listed in multiple places in State's Exhibit 7. R.R. vol. 7.

In addition, the third page of the document entitled "Pre-Release Notification Form Texas Sex Offender Registration Program" contained within State's Exhibit 7, lists the same county where the offense occurred, Chenango, as that reflected on the face of State's Exhibit 6. R.R. vol. 7. The document in State's Exhibit 7 entitled "Offender Relocate Notice From Colorado to Texas" lists "NY" under "Where Sex Conviction Occurred." R.R. vol. 7.

It is true that the State's Exhibit 7 shows Appellant's date of birth as 06/12/1966 and State's Exhibit 6 lists a date of birth of 06/1/1966, but in light of

the other linking evidence, the trial court did not abuse its discretion in deeming this a clerical error and admitting State's Exhibit 6. R.R. vol. 7.

Further, State's Exhibit 5, discussed below, reflects that Appellant was charged with violating sex offender registration conditions. R.R. vol. 7. Given that State's exhibit 7 reflects only the New York attempted rape conviction as a basis for the Appellant's duty to register, the existence of State's Exhibit 5 serves as another factor showing the connection between State's Exhibits 6 and 7.

In addition, State's Exhibit 3, the recorded interview of the Appellant contains an admission by the Appellant, at approximately 12:38:54, that he is a registered sex offender because of an Attempted Rape charge out of the state of New York. R.R. vol. 7. During this conversation, the Appellant gives further detail about the crime, telling the interviewer that he got drunk, blacked out, beat up a 38 year old woman, and tore her clothes off. R.R. vol. 7. He says the offense happened in 1998. R.R. vol. 7. Again at approximately 12:56:20, the Appellant admits that he was incarcerated in New York and took the first plea deal they offered him. At 13:07:34, the Appellant confirms yet again that he was involved in an attempted rape in New York. R.R. vol. 7.

The details in the Appellant's confession, beyond the fact of the admission itself, match details in the State's other exhibits. Specifically, the Appellant's admission to investigators that the victim in the attempted rape charge in New

York was a 38-year-old female corresponds to the victim information listed under the subheading "Offense Information" in State's Exhibit 7. R.R. vol. 7. The Appellant's admission that the New York offense happened in 1998 matches with State's Exhibit 6, which lists an indictment number of 98-39 and the Date of plea and sentence of December 17, 1998. R.R. vol. 7.

Given the manner in which these various links lend credibility to the Appellant's admission that he was convicted of the crime shown in State's Exhibit 6, the trial court did not abuse its discretion in admitting State's Exhibit 6.

### v. <u>The Evidence Sufficiently Links Appellant to State's Exhibit 5</u>

State's Exhibit 5 consists of two documents from the state of Nebraska, an Amended Complaint accusing Appellant of the crime of "Criminal Attempt— Violation of Sexual Offender Registration Act" and a "Journal Entry and Order" reflecting Appellant's sentencing for said crime. R.R. vol. 7. In addition to having the same name, State's Exhibit 5 and State's Exhibit 7 both reflect the Appellant's proper date of birth as 06/12/1966. R.R. vol. 7. As discussed above State's Exhibit 5 and 6 are linked to each other as well as Appellant since there is no other basis listed than the New York conviction that would require Appellant to register as a sex offender and thus no other reason that Appellant would be charged with violating the conditions of sex offender registration. Further in State's Exhibit 3,

20

discussed above, when the Appellant is asked if anything ever happened in Nebraska at approximately 13:07:34, the Appellant replies, "They got me for failure to register because I didn't know what the laws were…didn't get there in time or something so I got that." R.R. vol. 7.

This admission, along with the connection between State's Exhibit 6, which is clearly linked to the Appellant, and State's Exhibit 5 as well as the Appellant's correct date of birth, provide sufficient links such that the trial court did not abuse its discretion in admitting State's Exhibit 5.

Certainly when evaluating both State's Exhibits 5 and 6, the fact that the Appellant admitted to the offenses in his recorded interview is significant as that is something that the court in *Flowers* did not have. *Flowers*, 220 S.W.3d at 919-921. Further, in *Flowers* the Court of Criminal Appeals found a certified driver's record from the Texas Department of Public Safety sufficient to corroborate a computer print out of a conviction from the Dallas County Clerk's office. Here, we have far more information in the Certification of Sex Offender Record Information from the Texas Department of Public Safety admitted as State's Exhibit 7, than is typically obtained from driver's license records.

## VII.  PRAYER

Wherefore, the State respectfully requests that this Court affirm the conviction.

Respectfully submitted,

**Jana Duty**
District Attorney
Williamson County, Texas

/s/ John C. Prezas
**John C. Prezas**
State Bar No: 24041722
Assistant District Attorney
405 Martin Luther King, Box 1
Georgetown, Texas  78626
(512) 943-1234
(512) 943-1255 (fax)
jprezas@wilco.org

## VIII.  CERTIFICATE OF COMPLIANCE

I certify that the State's brief contains 4,999 words in compliance with Rule 9.4 of the Texas rules of Appellate Procedure.

/s/ John C. Prezas
John C. Prezas

## IX.  CERTIFICATE OF SERVICE

I certify that a copy of the State's brief has been e-filed on April 2, 2015, and sent to the attorney for Appellant, Kristen Jernigan, 207 S. Austin Ave., Georgetown, Texas, 78626, via e-service.

/s/ John C. Prezas
John C. Prezas